**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| OZOD KURBONOV,<br><br>*Petitioner,*<br><br>v.<br><br>TODD LYONS, et al.,<br><br>*Respondents.* | CIVIL ACTION<br>NO. 26-7233 |

**Pappert, J.** **November 16, 2026**

**MEMORANDUM**

Ozod Kurbonov filed a *habeas* petition, naming as respondents Todd Lyons (the Acting Director of U.S. Immigration and Customs Enforcement), Markwayne Mullin (the Secretary of the Department of Homeland Security), Joseph Edlow (Director of U.S. Citizenship and Immigration Services) and Joseph Kernan (the Director of the USCIS Asylum Vetting Center) and alleging the Government unlawfully failed to consider his asylum application. He asks the Court to order reinstatement of his application and enjoin the Government from detaining or removing him from the country until the application's adjudication. The Court dismisses the petition without prejudice for lack of jurisdiction.

I

A

The Immigration and Nationality Act and its implementing regulations establish procedures for aliens seeking asylum. An alien is a person who is not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3). The Attorney General may remove

aliens who unlawfully enter or remain in the United States. *Id.* § 1227. But the Secretary of Homeland Security or the Attorney General may grant asylum to an alien if he qualifies as a refugee. *Id.* § 1158(b)(1)(A). Asylum is a status that entitles a refugee to live and work in the United States. *Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2088 (2026). And a refugee includes a person who is unable or unwilling to return to his country because of persecution or a well-grounded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1101(a)(42)(A).

An alien may apply for asylum in one of three ways. *O.A. v. Trump*, 404 F. Supp. 3d 109, 121 (D.D.C. 2019). An alien may affirmatively apply within one year of arriving in the United States by filing a form with U.S. Citizenship and Immigration Services (USCIS)—a component of the Department of Homeland Security. 8 U.S.C. § 1158(a)(1); 8 C.F.R. §§ 208.2, 208.3, 208.9; *see* Deborah E. Anker & Jeffrey S. Chase, *The Law of Asylum in the United States* 29, 993–95 (2025) (explaining the affirmative-asylum process). After an alien applies for asylum, a USCIS officer conducts a non-adversarial interview to gather relevant information. 8 C.F.R. § 208.9(b). If an alien qualifies as a refugee, the officer may grant asylum. *Id.* § 208.14(b). If the officer does not grant asylum and the alien is inadmissible under 8 U.S.C. § 1182—which bars entry to aliens who, among other things, do not possess valid entry documents—the officer must refer the application to an immigration judge for adjudication during a removal proceeding. *Id.* § 208.14(c).

An alien may also seek asylum defensively after a removal proceeding begins. *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 848 (2026); *see* Anker & Chase, *supra*, at 30

(explaining the defensive-asylum process). The Department of Homeland Security may initiate removal proceedings against an alien living in the United States without authorization by sending him a notice to appear. 8 U.S.C. § 1229(a)(1). The notice informs the alien of the charges against him and the time and place of the formal hearing at which an immigration judge determines whether the alien should be removed. *Id.* §§ 1229(a)(1)(D), (G)(i); *Campos-Chaves v. Garland*, 144 S. Ct. 1637, 1643–44 (2024). The alien may defend against removal by seeking asylum, 8 U.S.C. § 1229a(c)(4); *Urias-Orellana*, 146 S. Ct. at 848, and may appeal the immigration judge's decision to the Board of Immigration Appeals, 8 C.F.R. §§ 1003.1(b), 1003.38(a). After exhausting these administrative procedures, the alien may petition for review in the appropriate federal court of appeals. 8 U.S.C. § 1252(a)(5).

Finally, an alien may indicate an intent to apply for asylum during inspection. An alien cannot lawfully enter the United States without first being inspected by an immigration officer. *Mullin*, 146 S. Ct. at 2087. During inspection, an immigration officer decides whether the alien is admissible under 8 U.S.C. § 1182, which (again) bars entry to aliens who, among other things, do not possess valid entry documents. 8 U.S.C. § 1182; *Mullin*, 146 S. Ct. at 2087. If the officer determines the alien is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C), (a)(7), he must generally "order the alien removed from the United States without further hearing or review," 8 U.S.C. § 1225(b)(1)(A)(i), a process called expedited removal, *Mullin*, 146 S. Ct. at 2087; Anker & Chase, *supra*, at 1037 (explaining the expedited-removal process). Before the officer's order of removal is final, it must be reviewed and approved by a supervisor. 8 C.F.R § 235.3(b)(7). "After obtaining supervisory concurrence in accordance with paragraph

(b)(7) of this section, the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt." *Id.* at § 235.3(b)(2)(i).

But if the alien "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer cannot order removal, but "shall refer the alien for an interview by an asylum officer." 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii). Instead of completing and serving the Form I-860, the referring officer must provide aliens with "a written disclosure on Form M-444, Information About Credible Fear Interview." 8 C.F.R. § 235.3(b)(4)(i), *see also id.* at § 235.3(b)(4) (describing such aliens as "subject to the expedited removal provisions"). The interviewing asylum officer must determine whether the applicant has a "credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(v). The Secretary may parole an alien into the United States while he awaits his credible-fear interview. 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 235.3(b)(4)(ii). If the asylum officer finds an applicant has a credible fear, the applicant will receive "full consideration" of his asylum claim in a removal hearing. 8 C.F.R. § 208.30(f); Anker & Chase, *supra*, at 1037. If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with the asylum officer's determination, the applicant may appeal to an immigration judge, who "shall make a *de novo* determination." 8 C.F.R. §§ 1003.42(c), (d)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020).

B

Ozod Kurbonov is a citizen of Uzbekistan who entered the United States illegally in 2021. (Pet. ¶ 43, Dkt. No. 1.) Immigration officers detained him near Yuma, Arizona

and during inspection determined he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because he did not have valid entry documents. *See* (Form I-860 at 2, Dkt. No. 5-3.) Kurbonov indicated his intention to apply for asylum. *See* (Form I-867A at 3–4, Dkt. No. 5-2.) Officers prepared and Kurbonov signed the Form M-444 referral for a credible fear interview, stating that he was inadmissible, subject to expedited removal proceedings, and required to attend a credible fear interview. *See* (Form M-444 at 2–3, Dkt. No. 5-5.) On September 13, 2021, the Department of Homeland Security paroled or released Kurbonov into the United States. (Pet. ¶ 45.)

On September 9, 2022, Kurbonov filed an affirmative application for asylum. (*Id.* ¶ 47.) On May 27, 2025, USCIS told Kurbonov that it could not process his application because he was subject to expedited removal. (*Id.* ¶¶ 49–51.) Kurbonov, USCIS explained, had to pursue asylum through the credible-fear process. (*Id.* ¶ 52.) On July 30, 2026, the Department of Homeland Security notified Kurbonov that his credible fear interview was scheduled for August 21, 2026, at the Newark Asylum Office. (*Id.* ¶ 55.)

Kurbonov did not attend the interview. (*Id.* ¶¶ 55–60.) He filed a *habeas* petition instead, alleging violations of the Immigration and Nationality Act, the Administrative Procedure Act, and the Fifth Amendment. (*Id.* ¶¶ 62–91.) He seeks an order reinstating his asylum application, enjoining his removal until USCIS adjudicates his application and declaring that he is not subject to an expedited removal order and that USCIS's dismissal of his asylum application was unlawful.

II

The Court lacks jurisdiction to adjudicate Kurbonov's petition.[1] In *habeas* proceedings, judicial review of "any determination made under section 1225(b)(1)" is limited to (1) whether the petitioner is an alien, (2) whether the petitioner "was ordered removed under such section[,]" and (3) whether the petitioner can prove by a preponderance of the evidence that he or she was granted asylum or admitted as a lawful permanent resident or refugee. 8 U.S.C. § 1252(e)(2). Section 1225(b)(1), again, governs expedited removal. Both Kurbonov and the Government agree that only (2) matters for purposes of *habeas* jurisdiction here, and both agree that Kurbonov was not ordered removed. *See* (Pet. ¶ 61; Gov't Resp. in Opp'n at 14, Dkt. No. 5.) The parties instead dispute whether Kurbonov is in expedited removal proceedings and thus subject to a determination made under section 1225(b)(1). *See* (Pet. ¶¶ 56–59; Gov't Resp. in Opp'n at 19.)

Kurbonov challenges the Government's application of Section 1225(b)(1). Section 1252 of Title 8 provides that "no court shall have jurisdiction to review" "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1)]" of Title 8 or "the application of such section to individual aliens." 8 U.S.C. §§ 1252(a)(2)(A)(ii), (iii). After Kurbonov entered the United States, immigration officers determined he was inadmissible under 8 U.S.C. § 1182(a)(7). *See* (Form I-860.) Officers prepared and

---

[1] The Court does not have *habeas* jurisdiction over petitioners who are not "in custody." 28 U.S.C. § 2241(c). Kurbonov is not currently detained by Respondents. (Pet. ¶ 7.) However, a restriction can be custodial for purposes of *habeas* jurisdiction if it is "(1) severe, (2) immediate (i.e. not speculative), and (3) not shared by the public generally." *Piasecki v. Ct. of Common Pleas, Bucks Cnty., PA*, 917 F.3d 161, 170 (3d Cir. 2019) (citation omitted). After detaining him in 2021, the Government released Kurbonov on several conditions, requiring him to report to appointments, attend immigration court hearings, and get permission from officers before changing his address. *See* (Order of Release on Recognizance at 2–3, Dkt. No. 1-1.) Even assuming Kurbonov's conditions of release are custodial, the Court lacks jurisdiction under 8 U.S.C. § 1252.

Kurbonov signed the Form M-444 referral for a credible fear interview, stating that he was inadmissible, subject to expedited removal proceedings, and required to attend an interview. *See* (Form M-444 at 2–3.)

Kurbonov argues that he is not in expedited removal proceedings because officers did not "serve" him with the Form I-860. *See* (Pet'r's Reply in Opp'n at 5, Dkt. No. 6.) This argument is a red herring. Again, when an officer determines that an alien is inadmissible under 8 U.S.C. § 1182(a)(7), he usually must order removal and serve the Form I-860. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(2)(i). But when, as here, an alien "indicates either an intention to apply for asylum" or "a fear of prosecution," the officer cannot order removal but "shall refer the alien for an interview by an asylum officer." 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii); *see also id.* at § 1225(b)(1)(B)(iii) (explaining that "the officer shall order the alien removed from the United States" only after "the officer determines that an alien does not have a credible fear of persecution").

Officers never ordered Kurbonov's removal because he skipped his credible fear interview. *See* (Form I-860 at 2.) But such an order is not necessary for him to be subject to removal. An officer completed the Determination of Inadmissibility portion of the Form I-860, stating that Kurbonov is "subject to removal." (Form I-860 at 2); *see also Firatli v. Mullin*, No. 3:25-CV-01361, 2026 WL 2364666, at *3–*4 (M.D. Tenn. Aug. 14, 2026) (finding that an alien was subject to expedited removal despite a blank "Order of Removal" section of the Form I-860). Kurbonov acknowledged this determination by signing the Form M-444, which states that "You have been placed in expedited removal proceedings because the U.S. Department of Homeland Security (DHS) believes that you may not have the right to stay in the United States." *See* (Form M-444 at 2.)

Officers only provide Form M-444s to aliens "subject to the expedited removal provisions" of 8 U.S.C. § 1182(a)(6)(C) or (7). 8 C.F.R. §§ 235.3(b)(1), (4).

Kurbonov seeks a declaration that the dismissal of his asylum application was unlawful, to require the Government to process his affirmative asylum application, and to enjoin the Government from detaining or removing him until the application is properly adjudicated.[2] (Pet. at 17–18.) But an alien subject to expedited removal cannot seek asylum by affirmatively filing an application. Anker & Chase, *supra*, at 994 (explaining that "noncitizens who are subject to expedited removal proceedings . . . are ineligible to affirmatively apply for asylum"). Rather, he must pursue asylum through the credible-fear process. 8 U.S.C. § 1225(b)(1)(A). Thus, to order the Government to consider Kurbonov's affirmative-asylum application, the Court would have to determine that Kurbonov is not in fact subject to expedited removal under 8 U.S.C. § 1225(b)(1). This would require the Court to review (1) a decision by the Attorney General to invoke expedited removal under 8 U.S.C. § 1225(b)(1) and (2) the application of that section to an individual alien. *See S.W. Noem*, No. 25-cv-9264, 2025 WL 3754067, at *4–*6 (S.D.N.Y. Dec. 29, 2025); *see also Marupov v. Lyons*, No. CV 26-2518-KSM, 2026 WL 3306369, at *4 (E.D. Pa. Nov. 2, 2026) (same); *Arora v. DHS*, 25-cv-07064, 2025 WL 3641586 at *1 (N.D. Cal. 2025) (same); *Singh v. DHS*, 25-cv-08180, 2025 WL 3241157 at *3 (N.D. Cal. 2025) (same). The Court cannot decide Kurbonov's

[2] In his Reply, Kurbonov requests, in the alternative, jurisdictional discovery into whether he is, in fact, currently in expedited removal proceedings. (Pet'r's Reply at 7–9.) Habeas petitioners who show good cause are entitled to discovery, "subject to a district court's sound discretion." *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011). A habeas petitioner may satisfy the "good cause" standard by setting forth specific factual allegations which, if fully developed, would entitle him or her to the writ. *Id.* Kurbonov does not attempt to satisfy this standard, and the "burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." *Id.*

claims because it cannot review "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1)]" or "the application of such section to individual aliens." 8 U.S.C. §§ 1252(a)(2)(A)(ii), (iii).

Because Kurbonov illegally entered the United States without valid entry documents and indicated his intention to apply for asylum, he must do so through the credible-fear process.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.